Mr. Muther. Yes, sir. Thank you. May it please the Court, my name is Tom Muther. I'm representing Cory Voorhis in this petition. Prior to his termination, Mr. Voorhis was a special agent with the Immigration and Customs Enforcement. He served in this position for 12 years. Prior to this time, he was a Border Patrol agent. Mr. Voorhis loved his job and had committed himself to the mission of the agency, namely to deport dangerous criminal aliens from the United States. So there's no mistake, Mr. Voorhis' job involved the apprehension, not of individuals who've come across necessarily illegally into the United States, but those individuals that once they were in the United States engaged in serious heinous crimes involving violence. What was the purpose of Mr. Voorhis' disclosure to Congressman Dupras? The purpose of disclosing this information to Congressman Votepreet, Mr. Voorhis has said all along, was to bring to light what he saw as a threat to public health and safety, that being the Denver District Attorney's Office's continuing clean of criminal alien charges, things involving, again, violent crime, drug crimes, down to misdemeanor crimes that they could not be deported for. He saw this as a practice on the part of the District Attorney's Office. It came up in a political context, but the purpose was to bring this issue to light so that Congressman Votepreet could do something with it and could potentially solve the issue. Even if that was a very meritorious reason for doing it, he doesn't have any excuse for misusing his office, does he? And gaining access to criminal information that is sensitive and disclosing it publicly? Well, sir, it's Mr. Voorhis' position that he did not misuse his office. Part of our appeal altogether was things such as the Whistleblower Protection Act, 5 U.S.C. 70... But he's not blowing the whistle against a federal official here, is he? Correct. He's not. He's blowing the whistle... Now, does that make it a protected disclosure if you're not blowing the whistle on anything that you have any whistle to blow on? Yes, sir. The MSPB has held that it could be a protected disclosure in the context of if it affects the good name and reputation of the federal government. So if it's a non-federal entity that affects the good name and reputation of the federal government, then those two would be intertwined to the point of creating a protected disclosure. And in this case, our position is that that was the situation. Mr. Voorhis learned about this through a press release that Mr. Ritter's campaign made where he indicated that he is tough on immigration law, and that the release and deportation of criminal aliens was not his fault, but the fault of the agency. This is also something that the record... Had we been allowed to develop a record at hearing, which we were not in one of our primary... So the disclosure was to respond to that, to respond to the DA's claims in the media. No, sir. The disclosure was to bring this issue, this threat to public health and safety, to light so that something could be done about it, either by Congressman Beaupre or some other legislature. But who was responsible for this threat that he was disclosing? It wasn't the federal officials. It was someone outside of the federal government. That's correct. The threat was from the district attorney's office. I don't understand how that can be part of the federal whistleblower statute. Even though the word reputation, it seems to me the statute is about one way, reporting misuse or abuse or fraud by the federal government, not by someone else to protect the federal government's good name and reputation as a defense to some non-federal party making a disclosure, right? Okay. Well, I think to approach it and maybe say it a different way, the federal government has exclusive authority over immigration issues, the deportation of criminal aliens. This is a practice that was, by the DA's practice, was known by the federal government for quite some time. And that, again, the connection between the DA's activities and the federal government, I think, is clear. Are you saying that he was blowing the whistle on the federal government's operation? It could most certainly have been efficient. Yes, ma'am. Can I take you to 7211? Yes. Because I guess I agree with you on one level, that the language of 7211 is quite broad. But if we accept, hypothetically, that all of his disclosures were for purposes of furthering a political campaign, then would you agree that that takes you outside of the 7211 protection? I don't believe that there is a preclusion on the part of 7211 that says that if you are doing this for political... The hearts or the intent of the individual disclosing the information is not identified by Congress as being a relevant factor in the statute. It's the release of information, whatever those motives may be. Okay. So that's... I'm just trying to get your view. There's got to be some confines to 7211. What about if it's something that he's not authorized to do? I mean, he's supposed to have access to criminal databases for purposes... Let's say, hypothetically, an officer has access to computer criminal databases for purposes of pursuing his caseload and his job. If he, therefore, accesses it for purposes outside of that, even if it's to petition a member of Congress or to give information to a member of Congress, do you think that's protected under 7211? My reading of the legislative history and the record is, yes, it is. There was actually, I believe we cite the legislative history regarding 7211 and the back and forth between Congress and the executive branch as to whether or not even classified information is protected under 7211. The release of classified information in Congress's position is most certainly... That can't be correct, can it? I mean, so if I release information on informants within the Mexican drug cartel to the Mexican drug cartel and also to Congress, of course, jeopardizing the lives of those informants, but I'm insulated because I also told Congress what I'm doing? Well, sir, in that situation, I would say that that's different from the case we have here, that there's no reasonable expectation that the Mexican drug cartel would be providing that information to Congress. In this situation... But you're willing to admit there's got to be some limit on 7211, right? You don't insulate otherwise criminal or improper behavior simply by including a congressman in the loop. Well, I would agree with you there. I think that the requirement is that the disclosure has to be reasonably geared at being provided to the Congress. Let's say, and this is truly a hypothetical because I'm sure it never has and never will happen, but if I'm running a campaign against Judge Rader and I want to find out about his tax returns, so I go to somebody I know at the IRS and say, pull up his tax returns because I want to go after this guy because I'm sure there's some problem here. And you, the IRS agent, gives me Judge Rader's tax returns. That's protected under 7211 even if that's clearly an improper disclosure on your part as an employee and it has to do with me dealing with... But I'm a congressman. I'm a congressman. And I have to run for my political campaign, so there's a need to know this related to my work. That's my argument. Is your view that comes under 7211? In that situation where the congressman is seeking that information... For purposes of keeping my job, so it's clearly job related. Well, I would say that the problem that the employee faces in this situation is when Congress is seeking information, oftentimes the employee does not understand or know what the intent of Congress is in using that information. And once Congress gets that information, it's entirely up to them whether they use it... So are you telling me the answer is yes, you're protected? That comes under 7211, my hypothetical. In this situation, I would believe yes, it would be. I don't see any restrictions in 7211 which would preclude that. Now, there may be issues on the congressional side of the ethics house as to what was done and whether there was a misuse of authority. But in that situation, at least my reading of the statute, the right of the period. Even if they're breaking the law and doing so? There are legal restrictions on how you can use this information in the criminal directories. Sure. I think it's instructive, sir, to answer... You're breaking the law, but as long as I give it to a member of Congress, it's okay. And in that, in answering your question, I would say yes. And the reason why is the way Congress wrote 7211, compare it to the Whistleblower Protection Act, which is another similar disclosure provision that appears in federal law for federal employees. In the Whistleblower Protection Act, there is an exclusion. You can't break the law when disclosing information under the Whistleblower Protection Act. There's no such exclusion specified under 5 U.S.C. 7211. One of the problems that I'm having with your argument is that whether the information was actually even given to the member of the House. And the record suggests that Mr. Borges was meeting with political operatives and going and attending meetings in places that suggest were consultants, political consultants. And the record suggests that those consultants were using that information in a campaign. And the disclosures took over a period of time. And he was handing over information that he was taking off of federal databases that he knew was breaking the law. And he's given them over not to the congressman, but to operatives. I have a hard time seeing how 7211 fits under those circumstances. And I guess I would preface, I don't necessarily agree with the factual position. The disclosures are given to the campaign manager, Mr. Marshall, who had direct access to Mr. Beaupre. Marshall, in the prior criminal trial where Mr. Borges was acquitted of wrongdoing, he testified to the fact that he immediately gave that information to Beaupre. Again, he told the campaign manager where to go and get the names off of public records. Correct. Bring them to me and I'll get the secret information. I'll make notations and give it back to you. Then the newspapers are filled with this data. How can that be a disclosure to a member of Congress for purposes of 7211? Because the disclosure was to his campaign manager who he thought was giving this directly to Beaupre. It turns out he was, in fact. Once it got to the congressman, the congressman had the 100 percent of discretion to do with it what he wished. You want to save your rebuttal time, Mr. Moody? Yes, sir. I would. Thank you. May it please the court. I'll start with the contention that the misconduct that was proven with regard to charges one, two, and three is immune from disciplinary action because this was a petition to Congress. In that regard, can you tell us how broad or how narrow the government thinks 7211 is? Yes, your honor. 7211 is very, very old. This is a very, very old statute. That doesn't change the impact of a statute. No, but there is precedent from the Court of Claims and also from the D.C. Circuit, which explains exactly the scope of 7211. And the 7211 scope is nothing different than the scope of the petitioning Congress clause of the First Amendment. And that's set out in footnotes, I think it's footnote 17 of the D.C. Circuit's opinion, Meehan versus Macy, where it said that this statute, 7211, is equal, has the same scope as the petitioning Congress clause of the First Amendment. The reason I said the statute was very old is because there is extensive precedent construing this statute. 7211, the predecessor, which has exactly the same language, is 5 U.S. Code 7102. And in the Civil Service Reform Act, that same section was just adopted as part of the Civil Service Reform Act and the number changed. This statute has been on the Cook versus the United States. Their construing, 7211, said that it had limitations upon it. And it doesn't allow you to essentially break the law. Government employees can be disciplined where they have broken agency policies, agency rules, regulations, statutes. It's not immune because somehow, somewhere, someone gets the information to a member of Congress. And I think in the Cook case, the information, there were defamatory statements that were made and those same defamatory statements were also provided to a member of Congress. That didn't make any difference. You still could be disciplined because you had engaged in employee misconduct. That's the same case here. Actually, this is a much stronger case. Just because it's unauthorized, the subject matter of what he was giving was unauthorized disclosure? It was unauthorized access. There were unauthorized queries, unauthorized disclosures, and misuse of his position. He got information he had only because he was a criminal investigator. He then proceeded to give to the Trailhead Group and to Mr. John Marshall. It seems to me, and maybe I'm misrecalling it, that either the AJ or the board or both, their emphasis on slicing 7211 seemed to be more on the purpose, because this was information going to a political campaign as opposed to an individual member of Congress. Is that your position as well? That's correct. There's two prongs with 7211. You must be petitioning Congress in the first place. And then if you do... Well, it says petition or furnish, right? Right. But here, he was not even giving anything to a congressperson or a member of the staff of the congressional office. He wasn't giving it to congressional staff. He wasn't giving it to the congressman himself. Also, your view is if the person he was dealing with... On Capitol Hill, a lot of people wear different hats depending on what time of the year it is. This person clearly at some point had been on the congressional staff. And let's assume he wasn't working on the campaign. Let's assume his title was and remained AA or staff director or whatever for a congressman, but he was still asking for the same information, and it was in the context of the campaign. Would that make it okay? Okay. So this is a hypothetical, right? Because Mr. Marshall was never associated with the congressman's office. He had no association at all. So in your hypothetical, which is not this case, then you have to consider there is a balancing test. If you conclude that is a communication with the congressperson, then there is a balancing test set out in the Supreme Court's decisions under the First Amendment, which are the same tests that is applied under Section 70-11 as stated by the D.C. Circuit and also the Court of Claims in the case Cook v. the United States. And what happens under the balancing test is you balance the government's interest in disciplining its employees for serious misconduct against the employee's interest, and you make a decision as to whether or not there is a right to be immune from disciplinary action. Under the First Amendment and also under 70-11, it has the same scope. Does it matter whether the action was actually illegal or not? Certainly it does, because in the balancing test... In this case, the action was deemed to not have been illegal. He was acquitted in criminal court for the disclosures. He was acquitted, but... They're improper disclosures. He was found not to have violated the criminal law. That's correct. But what he did violate were the standards of ethical conduct for government employees and the requirements for how you treat law enforcement information stored in a government database. And he was not supposed to go on there and conduct queries for a private individual. He was not supposed to then disclose that non-public information to the private individual, Mr. John Marshall, and other people working in the campaign. And he also misused his office because he had all this information about particular cases because of the nature of his job. Ms. Kirchner, this is really a story of involvement in a political campaign by a federal officer. Why isn't it within the exclusive jurisdiction of the Office of Special Counsel rather than the MSPB? The exclusivity of the Office of Special Counsel comes from the regulation, which states that the Office of Special Counsel has exclusive authority to investigate allegations... Exclusive, yes. Yes, allegations of political activity prohibited by the Hatch Act Amendment of 1993. It's our position that the Hatch Act doesn't throw a shield of immunity around government employee misconduct. If you engage in government employee misconduct, then the agency has the duty and the responsibility to discipline its employees. Well, it isn't a shield. We're just saying that the proper place is within the exclusive jurisdiction of the Special Counsel, right? What is exclusive is the authority to allege violations of the Hatch Act, and that was not that Mr. Voorhees had violated any provisions of the Hatch Act. What was alleged was that he made unauthorized queries of these government databases, then unauthorized disclosures of that information and misused his position because he had all this information because he was a criminal investigator. This was all confidential law enforcement information, and he was obligated not to disclose it to these private individuals. That's not a Hatch Act violation being pledged. That is ordinary government misconduct. Unfortunately, it happens repeatedly. For example, this court in the Morgan case upheld a board decision sustaining the removal of an employee who facilitated the disclosure of confidential information from the NCICS system. That's exactly what went on here, and that's what the agency charged. That's what the board and the judge found. The other issue... We have a situation here where it appears that Mr. Voorhees is arguing that I engaged in political activity. I invoked the Hatch Act, and yet it's not the Office of Special Counsel that's bringing charges against me. It's the department. What Mr. Voorhees actually testified to was that this really wasn't about political activity at all, that he was not a political person. All he cared about was to make sure people were locked up. That was his testimony, essentially. The charges here don't depend upon his motivation. The charges depend upon his actions. He was charged with making unauthorized queries for a private individual in the government databases, and then releasing that information to John Marshall and other individuals, for example, the Trailhead Organization. All these people had no law enforcement interest in any of this information, and he knew it wasn't being used for law enforcement purposes. He also understood that he only had the right to go on these government databases if indeed it was for a law enforcement purpose. In your view, the government has the option. Let's assume that he wasn't using the database, but he was just spending much of his time working at a campaign headquarters, sealing envelopes. That would be more in the line of a Hatch Act violation, would it not? If he's doing it on government time. Although the government could then just fire him for misusing time, right? It wouldn't necessarily have to pursue firing based on political activity. That's exactly correct, Your Honor. What about this situation where it appears that Mr. Borges did not like the job that the DA was doing, so they provide information to the congressman to use it in a race to defeat the DA in an electoral campaign? Here he's also, I'm assuming that the nature of the information given is the law enforcement information. It's information that is confidential, that is supposed to be kept confidential. With that added to your hypothetical, he's engaging in employee misconduct, giving out confidential information to an individual who doesn't have a right to that law enforcement... But it appears that he's doing it for campaign purposes, in order to defeat the DA in an electoral campaign. That's not a law enforcement purpose. He doesn't have authority to release that information. Right, it's a political purpose. You've presented a case that could be presented under both. It could be... If you have that situation, then, and the statute says that the jurisdiction or the authority of the Office of Special Counsel is exclusive in areas dealing of political activity, then why isn't the OCS involved here? I think that's what Judge Pro says. Do you really have a choice here? Who makes that decision? The government has a choice, because there can be all sorts of reasons why the Office of Special Counsel doesn't go forward with a case. They may think they don't have the resources. They don't have the time to investigate it. No, but they have exclusive authority. Nobody else can become involved. They have no choice in that, do they? They have exclusive authority to bring the investigation in charge of a Hatch Act violation. The agency has its own authority to enforce its own rules and regulations on the use of government equipment, government databases, email systems, and the agency, when those rules are broken, the agency has the duty and the responsibility to enforce those rules. And that's essentially what the agency was enforcing, its own standards in this case, and that did not charge any Hatch Act violations. I have just a little time left. If the Court is interested in the issue as to whether or not a hearing should be conducted with regard to the protected disclosure, there was a determination by both the board and the administrative judge here that Mr. Voorhees did not make out a 2302B8. Here there's been no showing, there was no showing of any federal involvement, and the one board case... Can I ask a question? Yeah, sure. Go ahead. I'm a little troubled on this part of the case because it appears that the A.J. says, I did not allow Mr. Voorhees to present evidence regarding whether his disclosures is protected under the Official Blower Protection Act. And then he goes on and says, but I'm going to address it anyway, since he brought up the issue again in his reply brief. So apparently he was not given the opportunity to address that issue and to present evidence, yet the A.J. finds and makes a merit determination that the first prong of being entitled to a hearing on that first prong, you have to have made a non-frivolous allegation of a protected disclosure coming within the statute. The administrative judge issued a pretrial order directing that Mr. Voorhees lay out what facts he intended to prove and the witnesses that were going to testify and what they were going to testify to. In that pretrial disclosure, he said he was going to show that Mr. Ryder's policy as the Denver DA led to these plea bargains, which he thought were a hazard to public safety. People were pleading to misdemeanors. They should have been pleading to felonies in his point of view. So that is the nature of the evidence that he intended to present, and he said that in his pretrial statement. Then there was a pretrial hearing conference where those arguments were made, and at the pretrial hearing, the judge made the ruling saying, presenting more of this because there's no federal involvement at all. On that last point, I would just simply like to point out that the agency, the government, has the law wrong. There's no obligation to show a non-frivolous allegation in a case where the MSPB already has jurisdiction as it does in this case. Mr. Voorhees had jurisdiction on account of the fact that he was terminated from federal employment. He was a non-probationary employee. He did not need to show a non-frivolous allegation before having a right to a hearing. I think in order to advance a whistleblower case, you do have to demonstrate the... I'm sorry. Sir, in the context, and this is where I think the law is somewhat confusing and where the agency has conflated the legal standards, there's what is called an individual right of action appeal where it's not otherwise appealable. So it's on issues that are not appealable otherwise, such as short suspensions, relocations, reassignments, things that the MSPB would not normally have jurisdiction over. In that case, an employee does need to show a the case and to determine whether or not there should be a hearing. But that's in a very separate type of case. What's our case? I mean, have we articulated that view in terms of the distinction between an IRA and an MSPB case in terms of frivolous and non-frivolous? Yes, ma'am. I believe... I mean, they are cited into the brief where you have identified where an individual has a right to a hearing on an affirmative defense in a case where the MSPB has jurisdiction over it, and do you want me to cite to the cases? They're in the brief, ma'am. Yes. The agency wants it both ways. They want to say that Mr. Voorhees was precluded from the protections of 5 U.S.C. 70211 because he was engaging in partisan political activity. But then they also want to say, we are not charging him with partisan political activity. We're leaving... And again, I... What's wrong with that? I mean, that's what... The agency does have a choice. I mean, then they have to meet... They still have to meet their burden, but they do get to decide whether or not they wanted to fire him just for political conduct or whether they had some other basis to fire him. To use the rationale that the agency applies, each and every Hatch Act violation is necessarily a code of conduct violation in and of itself because it's a violation of some... Of the Hatch Act. So to use this agency's rationale, the OST really has exclusive jurisdiction over nothing, that the agency can decide to independently prosecute each and every Hatch Act violation, no matter how fundamental a Hatch Act violation it is. For example, your example of utilizing government property to send postal postage for campaigns. I think your opponent is saying that the OCS has exclusive jurisdiction to bring a charge under the Hatch Act, but that the department itself has its own set of regulations and rules regarding disclosures and participation in partisan politics. That it's their choice. Yeah. And in response to that, the OSC's jurisdiction does not start with the charge. It starts with the investigation. And those allegations of Hatch Act violation are where the OSC's jurisdiction starts. The agency never provided the OSC, at least from the record that we have to our knowledge, ever provided the OSC an opportunity to investigate these allegations. They went forward on their own motion or on their own. Thank you, Mr. Muther. Our last case this morning is Cornish v. Capo.